IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Nathaniel Hampton, | ) | C/A No. 4:14-4697-JMC-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Paula Edgerton; Robina Schenck; Cynthia Williams; and Willie Coleman, *Housing Authority of Florence*, | ) ) ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Nathaniel Hampton, a self-represented litigant, filed this action alleging a violation of his constitutional rights by the defendants under 42 U.S.C. § 1983. Hampton also alleges state law tort claims against the defendants. The defendants removed this action from the Florence County Court of Common Pleas and the matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the parties' cross motions for summary judgment.[1] (ECF Nos. 9, 15, 30, & 42.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised Hampton of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motions. (ECF Nos. 32 & 43.) The parties filed responses (ECF Nos. 22, 47), and Hampton replied

---

[1] "[A] party is generally not permitted to raise a new claim in response to a motion for summary judgment." White v. Roche Biomedical Labs., Inc., 807 F. Supp. 1212, 1216 (D.S.C. 1992); see also Bridgeport Music, Inc. v. WM Music Corp., 508 F.3d 394, 400 (6th Cir. 2007) (holding that a party may not expand its claims to assert new theories in response to summary judgment). Thus, to the extent Hampton is attempting to raise additional claims in his motions for summary judgment or in his response to the defendants' motions, such claims are not properly before the court and are not considered.

(ECF No. 34). Additionally pending before the court are Hampton's motions for a preliminary injunction[2] (ECF No. 26), to amend his Amended Complaint (ECF No. 45), and for settlement (ECF No. 53). Having reviewed the parties' submissions and the applicable law, the court finds that the defendants' motions for summary judgment should be granted and Hampton's motions should be denied.

## BACKGROUND

The following facts are either undisputed or taken in the light most favorable to the non-moving party to the extent they find support in the record. (See generally Am. Compl., ECF Nos. 8 & 8-1.) At the time he filed his Complaint, Hampton was a resident of Creekside Village apartments, a property managed by the Housing Authority of Florence. Hampton entered into a lease agreement with the housing authority on April 10, 2014, listing himself as the head of household and the sole tenant. Hampton alleges that he received a letter from the defendants dated October 15, 2014 notifying him that his lease would be terminated in November due to his non-compliance with the housing authority's rules and procedures. Specifically, the letter stated that Hampton was in violation of his lease because Hampton's friend—who was not listed as a household tenant on the lease agreement—was living in the apartment with him. The letter also indicated that Hampton had previously been given an opportunity to provide a letter from his doctor stating that his medical condition required someone to live with him, but that Hampton did not do so. Hampton alleges receipt of a second letter from the defendants on November 25, 2014 indicating that his lease was also terminated for his refusal to remove his vehicle from the Creekside Village parking lot.

---

[2] Hampton's motion for a preliminary injunction asks the court to enjoin his eviction from Creekside Village. (ECF No. 26 at 1, 4.) However, Hampton has since advised the court that he no longer lives at Creekside Village. (ECF No. 60.) Accordingly, this motion is moot.

Page 2 of 15



The defendants held a series of hearings with regard to Hampton's tenancy which appears to have consisted of an informal grievance hearing on October 20, 2014; an initial informal hearing on November 5, 2014; and a formal hearing on November 25, 2014. Prior to the second hearing, Hampton filed a complaint against Defendants Schenck, Edgerton, and Williams in the Florence County Magistrate Court. Hampton alleges that following the third hearing he received the November 25, 2014 letter from the defendants upholding the termination notice and informing Hampton that he must vacate the premises no later than December 15, 2014. Hampton seeks monetary damages.

## DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the



entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.     Hampton's Claims**

    **1.     First Amendment**

        **i.     Right to Free Association**

The First Amendment protects an individual's right to free speech, free association, and "the right to be free from retaliation by a public official for the exercise of [those] right[s]." Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000). Courts have interpreted the First Amendment's freedom of association to include freedom of intimate association and freedom of expressive association. Roberts v. United States Jaycees, 468 U.S. 609, 617-18 (1984). With regard to the first instance, courts have concluded that a person's decision to "enter into and maintain certain intimate human relationships," such as "those that attend the creation and sustenance of a

family," should receive protection "as a fundamental element of personal liberty." Id. at 617-19. Expressive association, on the other hand, has been recognized by the Courts as "a right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." Id.

Hampton alleges that the defendants terminated his lease due to Hampton's association with a friend identified as Jessica Davis, whom Hampton argues does not live with him, and due to his failure to remove his vehicle from the Creekside Village parking lot. (Am. Compl., ECF No. 8-1 at 6.) In support of his first motion for summary judgment, Hampton provides an affidavit from Davis in which she avers that she lives separately from Hampton but cleans his apartment. (Davis Aff., ECF No. 13 at 2.) Davis further avers that she stays with Hampton "some nights" when he is on medication. (Id.) Both Hampton and the defendants provide a copy of Hampton's signed Public Housing Lease reflecting Hampton as the only member of his household and stipulating that accommodation for any other adult or live-in care giver requires landlord consent. (Lease, ECF No. 15-4 at 1, 3-4.) The lease further requires Hampton to "remove from Landlord property any vehicles without valid registration." (Id. at 7.)

In support of their motions for summary judgment, the defendants have provided affidavit testimony from Defendant Robina Schenck, an assistant manager with the Florence Housing Authority in charge of the Creekside Village apartment building. (Schenck Aff., ECF No. 42-13.) Schenck testifies that she received anonymous complaints in May and June of 2014 that Hampton had an unauthorized occupant in his apartment, and that video footage from the apartment building's security cameras showed Hampton's friend entering and exiting Hampton's apartment "at all hours on multiple occasions." (Id. at ¶¶ 4-5, 8, ECF No. 42-13 at 1.) Schenck avers that a meeting was

held with Hampton on June 16, 2014 to address the situation, and at that time Hampton indicated that he needed someone to help him due to medication that he was taking. (Id. at ¶ 6.) Schenck further avers that Hampton was informed that he could obtain a doctor's note indicating this necessity, or that he could add his friend's name to his lease, but that Hampton never did so. (Id. at ¶¶ 6-7.) Schenk also testifies that Hampton's vehicle lacked a license plate and that Florence Housing Authority policy requires all vehicles in the parking lot to display proper license plate tags. (Id. at ¶¶ 9, 13.) Schenk avers that she took a photograph of Hampton's unlicensed vehicle on December 22, 2014, which Schenk attached to her affidavit. (Id. at ¶ 14; see also ECF No. 42-13 at 11.)

Upon review of the record in this case, the court finds that Hampton fails to forecast evidence from which a reasonable jury could find a violation of his First Amendment rights by the defendants. As an initial matter, Hampton has failed to identify any speech, other activities, or intimate relationships that would be afforded protection under the First Amendment's right to association pursuant to federal law. See, e.g., Klupt v. City of Chicago, No. 88 C 7528, 1989 WL 36406, *6-10 (N.D. Ill., Apr. 4, 1989) (discussing the parameters of recognized constitutional protection regarding freedom of association). Moreover, Hampton's response in opposition to the defendants' motions for summary judgment does not refute the defendants' assertion that he was informed of the options necessary to comply with the terms of his lease agreement and that he failed to do so. Further, while Hampton continues to argue that Davis does not reside in his apartment (Pl.'s Resp. Opp'n Summ. J. , ECF No. 47 at 3), he does not refute the defendants' assertion of anonymous complaints about, and video footage of, Davis entering and exiting Hampton's apartment on multiple occasions at various hours. Moreover, Hampton provides affidavit testimony from Davis admitting that she

occasionally stays overnight when Hampton is on medication and needs assistance. (Davis Aff., ECF No. 13 at 2.) Hampton also fails to refute the defendants' contention that his car was not properly licensed in violation of Housing Authority policy. Accordingly, as no reasonable jury could find that the defendants violated Hampton's right to free association under the First Amendment, the court concludes that the defendants' motions for summary judgment should be granted as to this claim.

### ii.     Retaliation

"A Plaintiff seeking to assert a § 1983 claim on the ground that he experienced government retaliation for this First Amendment-protected speech must establish three elements: (1) his speech was protected, (2) the 'alleged retaliatory action adversely affected' his protected speech, and (3) a causal relationship between the protected speech and the retaliation." Raub v. Campbell, 785 F.3d 876, 885 (4th Cir. 2015) (quoting Suarez, 202 F.3d at 685-86 ). The causal requirement is "rigorous" and it is "not enough that the protected expression played a role or was a motivating factor in the retaliation; claimant must show that 'but for' the protected expression the [defendant] would not have taken the alleged retaliatory action." Id. (quoting Huang v. Bd. of Governor's of the Univ. of N.C., 902 F.2d 1134, 1140 (4th Cir. 1991)) (internal quotation marks omitted).

Hampton asserts that his lease was terminated in retaliation for his testimony during the informal hearing process and for filing a complaint against the defendants.[3] (Am. Compl., ECF No.

---

[3] Hampton's motion to amend seeks to re-assert his allegation that the defendants terminated Hampton's lease in retaliation for his filing a complaint against the defendants in state court. (ECF No. 45-1.) However, as discussed above, Hampton cannot show that "but for" his filing of the civil action, the lease would not have been terminated. Raub, 785 F.3d at 885. Accordingly, further amendment of the Amended Complaint to re-assert such a claim would be futile and Hampton's motion to amend is therefore denied.



8-1 at 13.) However, even if the court presumes, without deciding, that Hampton satisfies the first two elements of a retaliation claim, he cannot demonstrate the requisite causal connection. The undisputed record in this case reflects that Hampton allowed Davis to occasionally stay in the apartment overnight as an unauthorized occupant, and that Hampton kept an unlicensed vehicle in the Creekside Village parking lot. Both of these constitute a violation of the Housing Authority's rules and Hampton's lease agreement. Thus, Hampton cannot show that "but for" his testimony during the informal hearing process or his filing of a complaint against the defendants, the lease would not have been terminated. Accordingly, the court concludes that no reasonable jury could find that the defendants retaliated against Hampton in violation of the First Amendment; the defendants' motions for summary judgment should therefore be granted as to that claim.

### 2. Fourteenth Amendment

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law; nor deny any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).

Hampton alleges that the defendants' requirement that Hampton remove his vehicle from the Creekside Village parking lot violated his right to equal protection under the Fourteenth Amendment. (Am. Compl., ECF No. 8-1 at 7.) Hampton further asserts that his right to due process was violated by the defendants' enforcement of the lease agreement and by Defendant Schenk's

alleged withholding of "exculpatory evidence and information" during the informal hearing process. (Id. at 9, 11-12.)

As indicated above, Schenk testifies in her affidavit that Hampton's vehicle did not have a license plate, which violated the Housing Authority's policy. (Schenk Aff., ECF No. 42-13 at 2.) Schenk further testifies that the defendants: (1) met with Hampton on June 16, 2014 to inform him that Davis could not stay in his apartment and advise Hampton that he could add Davis to the lease if he obtained a doctor's note indicating a need for care giver assistance; (2) provided Hampton an informal grievance hearing; and (3) provided Hampton a final hearing regarding the proposed termination of his lease. (Id. at ¶¶ 6, 11-12.) The defendants also provide affidavits from Defendant Willie Coleman, a Hearing Officer for the Florence Housing Authority, and Defendant Paula Edgerton, property manager for the Florence Housing Authority. (Coleman Aff., ECF No. 42-11; Edgerton Aff. ECF No. 42-12.) Both defendants testify that they were present at Hampton's final hearing on November 25, 2014, and aver that Hampton attended the hearing and was provided an opportunity to testify and cross examine all of the witnesses. (Coleman Aff., ECF No. 42-11 at 1; Edgerton Aff., ECF No. 42-12 at 1.)

Hampton's response in opposition to the defendants' motions for summary judgment confirms that he was provided an informal hearing on November 5, 2014 and a formal hearing on November 25, 2014. (Pl.'s Resp. Opp'n Summ. J., ECF No. 47 at 12.) While Hampton continues to assert that Defendant Schenk withheld information that would allegedly show that Davis did not reside with Hampton, he fails to refute the defendants' contention that he was provided an opportunity to testify and challenge evidence during the hearing process. In fact, Hampton's above-discussed retaliation claim appears to rest on his assertion that he did testify during the hearing

process. (Am. Compl., ECF No. 8-1 at 13.) Hampton does not refute the defendants' assertion that Hampton's vehicle lacked a license plate and violated Housing Authority policy.

As Hampton has forecast no evidence in this case from which a reasonable factfinder could infer intentional discrimination by the defendants, or that the defendants treated Hampton differently from other similarly situated tenants whose vehicles lacked license plates and valid registration, his equal protection claim must fail. Morrison, 239 F.3d at 654. Moreover, because the undisputed record reflects that Hampton was accorded both an informal and formal hearing during which he had the opportunity to testify and challenge evidence, he also fails to demonstrate a denial of due process by the defendants. Accordingly, the court concludes that no reasonable jury could find that the defendants violated Hampton's rights under the Fourteenth Amendment and finds that the defendants' motions for summary judgment should be granted as to Hampton's due process and equal protection claims.[4]

### 3. Conspiracy

" 'To establish a conspiracy under [42 U.S.C.] § 1983, [a plaintiff] must present evidence that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy, which resulted in [the] deprivation of a constitutional right.' " Glassman v. Arlington Cnty., 628 F.3d 140, 150 (4th Cir. 2010) (alterations in original) (quoting Hinkle v. City of

---

[4] The defendants also argue that Hampton's claims against Coleman and Edgerton are barred by the doctrine of judicial immunity, which provides absolute immunity to a judicial officer in the performance of his or her duties. (Defs.' Mem. Supp. Summ. J. , ECF No. 42-1 at 4) (citing Mireless v. Waco, 502 U.S. 9, 12 (1991)). While this immunity extends to municipal and magistrate court judges, Figueroa v. Blackburn, 208 F.3d 435, 441-43 (3d Cir. 2000), the defendants provide no authority suggesting that Housing Authority hearing officers, who appear to be executive branch officers, are protected by judicial immunity. However, because the defendants are entitled to summary judgment on the merits of Hampton's claims, the court need not decide the issue of judicial immunity in this case.



Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996)).  The plaintiff "must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." Hinkle, 81 F.3d at 421.  His factual allegations must reasonably lead to the inference that the defendants came to a mutual understanding to try to "accomplish a common and unlawful plan," and must amount to more than "rank speculation and conjecture," especially when the actions are capable of innocent interpretation.  Id. at 422.

In the present action, as argued by the defendants, Hampton provides no concrete facts to demonstrate that the defendants came to a mutual understanding, or acted "jointly in concert" to deprive Hampton of any constitutional right.  Rather, he summarily states that the defendants jointly decided to terminate Hampton's lease because of whom he chose to associate with.  Hampton asserts that letters written and hearings conducted by the defendants are evidence of their "common and unlawful plan" to terminate his lease.  (Am. Compl., ECF No. 8-1 at 8.)  However, the facts presented in the Amended Complaint fail to establish a conspiracy by the defendants to deprive Hampton of any constitutional right, and instead reflect only the defendants' attempt to accomplish the goal of terminating Hampton's lease due to his violation of its terms.  The court "need not accept the [plaintiff's] legal conclusions drawn from the facts," nor need it "accept as true unwarranted inferences, unreasonable conclusions, or arguments." Kloth v. Microsoft Corp., 444 F.3d 312, 319 (4th Cir. 2006); see also Walker v. Prince George's Cnty., 575 F.3d 426, 431 (4th Cir. 2009).  Moreover, as previously discussed, Hampton cannot show that his constitutional rights were violated in this case; accordingly, Hampton's conspiracy claim likewise fails, and the defendants' motions for summary judgment should be granted as to this claim.

PJG

    **4.    Other Federal Claims**

To the extent that Hampton's Amended Complaint may be construed to allege any other federal causes of action, the court finds that Hampton has failed to plead sufficient facts to state a plausible claim.  See Ashcroft v. Iqbal, 556 U.S. 662 (2009).

    **5.    State Law Claims**

        **i.    Negligence**

In South Carolina, to recover in a negligence claim, "a plaintiff must prove the following three elements:  (1) a duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligence act or omission; and (3) damage proximately resulting from the breach of duty." Bloom v. Ravoira, 529 S.E.2d 710, 712 (S.C. 2000).  Hampton asserts that the defendants acted negligently and breached their duty by denying access to qualified tenants, and instead housed "High Income Citizens."  (Am. Compl., ECF No. 8-1 at 10.)  However, as argued by the defendants, it is undisputed that the defendants provided Hampton with public housing by entering into a lease agreement with him in April of 2014.  Further, the defendants have presented evidence to show that Hampton's lease was terminated for cause.  As Hampton fails to forecast evidence to show that he was denied access to public housing in favor of another person, and provides no evidence to demonstrate that the defendants acted negligently in the termination of his lease, the court concludes that no reasonable jury could find the defendants liable for negligence in this case.  Accordingly, the defendants' motions for summary judgment should be granted as to Hampton's negligence claim.

        **ii.    Intentional Infliction of Emotional Distress**

"To recover under an intentional infliction of emotional distress theory, a plaintiff must establish (1) the defendant intentionally or recklessly inflicted severe emotional distress, or was



certain, or substantially certain, that such distress would result from his conduct; (2) the conduct was so 'extreme and outrageous' so as to exceed 'all possible bounds of decency' and must be regarded as 'atrocious, and utterly intolerable in a civilized community;' (3) the actions of the defendant caused plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was 'severe' such that 'no reasonable man could expect to endure it.' " Bass v. South Carolina Dep't of Soc. Servs., 742 S.E.2d 667, 672 (S.C. Ct. App. 2013) (quoting Argoe v. Three Rivers Behavioral Health, L.L.C., 710 S.E.2d 67, 24 (S.C. 2011)).

As argued by the defendants, Hampton's Amended Complaint seeks damages for emotional distress, but provides no factual allegations to support such a claim. (Am. Compl., ECF No. 8-1 at 14.) In response to the defendants' motions for summary judgment, Hampton asserts that he takes a medication used to treat a variety of conditions including depression, other mental health disorders, and mood disorders. (Pl.'s Resp. Opp'n Summ. J. , ECF No. 47 at 20.) Hampton also submits medical records listing his prescriptions. (Medical Records, ECF No. 47-9.) However, Hampton avers that he was on medication prior to the termination of his lease, which allegedly resulted in his need for Davis's assistance with cleaning. (Hampton Aff., ECF No. 47-1 at 2.) Hampton has not presented evidence to show that the defendants' termination of the lease caused Hampton severe distress, and he does not forecast evidence to show that the defendants "intentionally or recklessly inflicted severe emotional distress," or engaged in the type of "extreme and outrageous" conduct necessary to state a plausible claim for intentional infliction of emotional distress. Bass, 742 S.E.2d at 672. Accordingly, the court concludes that no reasonable jury could find that the defendants are liable for intentional infliction of emotional distress, and the defendants' motions for summary judgment should be granted as to that claim.



## RECOMMENDATION

For the foregoing reasons, the court recommends that the defendants' motions for summary judgment be granted. (ECF Nos. 30 & 42.) In light of this recommendation, the court further recommends that Hampton's motions for summary judgment (ECF Nos. 9 & 15) be denied and all other pending motions (ECF Nos. 26, 45 & 53) be terminated.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

July 22, 2015
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).