# UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# FLORENCE DIVISION

| | | |
|---|---|---|
| Nathaniel Hampton, | ) | Civil Action No.: 4:14-cv-04697-JMC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Paula Edgerton; Robina Schenck; Cynthia Williams; and Willie Coleman, Housing Authority of Florence, | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

In this civil rights action brought pursuant to 42 U.S.C. § 1983, pro se Plaintiff Nathaniel Hampton alleges that Defendants Paula Edgerton ("Edgerton"); Robina Schenck ("Schenck"); Cynthia Williams ("Williams"); and Willie Coleman ("Coleman"), all in their official capacities with the Housing Authority of Florence ("HAF"), (collectively "Defendants") violated Plaintiff's constitutional rights by terminating his lease for an apartment managed by the HAF. (See ECF Nos. 1-1 & 8.) Specifically, Plaintiff asserts federal constitutional claims against Defendants for (1) interference with the right to free speech and free association, civil conspiracy, and retaliation in violation of the First Amendment; and (2) equal protection deprivation and failure to provide exculpatory evidence in violation of the Fourteenth Amendment. (ECF No. 1-1 at 6–9 & 11–13.) Plaintiff also asserts state law claims for negligence and intentional infliction of emotional distress. (Id. at 10 & 14.)

This matter is now before the court on (1) Plaintiff's Motions for Summary Judgment (ECF Nos. 9 & 15) pursuant to Fed. R. Civ. P. 56 (the "Rule 56 Motions"); (2) Plaintiff's Motion for Preliminary Injunction (ECF No. 26); (3) Defendants' Rule 56 Motions (ECF Nos. 30 & 42);

(4) Plaintiff's Motion to Amend the Amended Complaint (ECF No. 45); and (5) Plaintiff's Motion for Settlement (ECF No. 53). In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02(B)(2)(g) D.S.C., the matter was referred to United States Magistrate Judge Paige J. Gossett for pretrial handling. On July 22, 2015, the Magistrate Judge issued a Report and Recommendation (the "Report") (ECF No. 63) in which she recommended that the court grant Defendants' Rule 56 Motions, deny Plaintiff's Rule 56 Motions, and terminate (or deny) all other pending Motions. Thereafter, Plaintiff filed objections to the Magistrate's Report (the "Objections"). (ECF No. 65.) For the reasons set forth below, the court **GRANTS** Defendants' Rule 56 Motions, **DENIES** Plaintiff's Rule 56 Motions and all remaining pending Motions.

## I.     JURISDICTION

This court has jurisdiction over this matter pursuant to 42 U.S.C. § 1983, which permits an injured party to bring a civil action against a person who, acting under color of state law, ordinance, regulation, or custom, causes the injured party to be deprived of "any rights, privileges, or immunities secured by the Constitution and laws." Id.

## II.     RELEVANT BACKGROUND TO THE PENDING MOTIONS

The Magistrate Judge's Report contains a thorough recitation of the relevant factual and procedural background of the matter. (See ECF No. 63 at 2–3.) The court concludes upon its own careful review of the record that the Report's factual and procedural summation is accurate, and the court adopts this summary as its own. The court will only recite herein background facts pertinent to the analysis of the pending Motions.

On April 10, 2014, Plaintiff entered into a Public Housing Lease (the "Lease") with the HAF to rent a dwelling unit located at 2311 W. Palmetto Street #201 (the "Apartment"). (ECF No. 30-7.) The Lease limited usage of the Apartment to a resident and the resident's household and specifically identified Plaintiff as a resident without a household. (Id. at 1.) Additionally,

the Lease incorporated by reference a Briefing Packet that stated a requirement that "[a]ll resident owned vehicles must have current license tags." (See id. at 14 ¶ 25; see also ECF No. 30-3 at 4 ¶ (B)(1)(b).)

At the Creekside Village Apartment Building where the Apartment was located, Schenck was the Assistant Property Manager and Edgerton was the Manager. (ECF No. 30-13 at 1 ¶¶ 1–3.) As part of her duties, Schenck regularly checked the building's anonymous complaint box. (Id. at 1 ¶ 4.) On May 29, June 9, and June 13 of 2014, residents of the Creekside Village Apartment Building complained that an unauthorized female occupant, Plaintiff's girlfriend Jessica Davis ("Davis"), was staying in his Apartment. (Id. at 1 ¶ 5, 3–4.) On June 16, 2014, Schenck met with and informed Plaintiff that Davis could not stay with him. (Id. at 1 ¶ 6.) In response to Schenck, Plaintiff claimed that he required someone like Davis to wake him up due to his medications. (Id.) Schenck told Plaintiff that in order for Davis to stay in the Apartment with him, he needed to either add Davis to the Lease or provide a doctor's note. (Id.) On July 2, 2014, Plaintiff met with Edgerton who told Plaintiff that Davis "needed to leave your apartment on that day until the proper paperwork was completed." (ECF No. 30-6.)

In October 2014, residents of the Creekside Village Apartment Building again filed complaints regarding Plaintiff's activities. (ECF No. 30-13 at 5–8.) On October 15, 2014, Edgerton sent correspondence to Plaintiff informing him that the Lease was being terminated "due to non-compliance of Housing Authority rules and procedures" and he would have to vacate the premises "no later than November 17, 2014." (ECF No. 9-3 at 1.) Additionally, Edgerton informed Plaintiff that he had ten (10) days to request a "Grievance Hearing under the Housing Authority's Grievance Procedure Policy." (Id.) Plaintiff requested an informal grievance hearing regarding the termination of the Lease on October 16, 2014. (ECF No. 30-4.)

On October 20, 2014, Edgerton and Schenck conducted a grievance hearing with Plaintiff

for alleged violations of the Lease involving "illegal boarders or lodgers, failure to provide timely and accurate documentation, and failure to abide by Housing rules and regulations." (ECF Nos. 30-4 & 30-9.)  At the hearing, Plaintiff communicated that he paid his rent on time, his apartment was clean, and no one was staying with him.  (Id.)  Edgerton countered that she and numerous residents had seen Davis entering and exiting Plaintiff's apartment and if he needed Davis to live with him to help with medications, he had to provide a doctor's note.  (Id.)  After the October 20, 2014 grievance hearing, Edgerton chose to uphold the decision to terminate the Lease.  (ECF No. 30-12 at 1 ¶ 5; see also ECF No. 30-4.)

On November 25, 2014, Coleman, Edgerton, and Schenck held a final hearing with Plaintiff regarding his eviction.  (ECF No. 30-5 at 3.)  Plaintiff communicated that he was following the rules and procedures, but felt like he was "being targeted."  (Id.)  Plaintiff stated that the "young lady" did not live with him, but he could "associate with whomever he likes." (Id.)  Finally, Plaintiff revealed that he was unable to remove his car from the property, but he did not understand why this was a problem since other vehicles had sat inoperable on the property for periods of time.  (Id.)  On November 25, 2014, Edgerton notified Plaintiff that the October 15, 2014 termination had been upheld and he would have to vacate the Apartment "on or before December 15, 2014."  (ECF No. 9-3 at 4.)

On December 3, 2014, Plaintiff filed suit against Edgerton, Schenck, and Williams in the Florence County (South Carolina) Court of Common Pleas alleging claims for interference with the right of free speech and free association ("Count 1") (ECF No. 1-1 at 6), discrimination ("Count 2") (id. at 7), civil conspiracy ("Count 3") (id. at 8), equal protection deprivation ("Count 4") (id. at 9), negligence ("Count 5") (id. at 10), failure to provide exculpatory evidence ("Count 6") (id. at 11), retaliation ("Count 7") (id. at 13), and intentional infliction of emotional distress ("Count 8") (id. at 14).  On December 12, 2014, Defendants removed the matter to this

court on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1331.  (ECF No. 1.) After Edgerton, Schenck, and Williams answered the Complaint (ECF No. 5), Plaintiff filed an Amended Complaint on December 19, 2014, to add Coleman as a Defendant.[1]  (ECF No. 8.) Also on December 19, 2014, Plaintiff filed his first Rule 56 Motion and then filed a second Rule 56 Motion on December 29, 2014.  (ECF Nos. 9 & 15.)  Defendants filed a Memorandum Opposing Both of Plaintiff's Motions for Summary Judgment on January 6, 2015.  (ECF No. 22.)

On January 7, 2015, Plaintiff filed a Motion for Preliminary Injunction.  (ECF No. 26.) Thereafter, on January 12 and 29, 2015, Defendants filed cross Rule 56 Motions (ECF Nos. 30 & 42) to which Plaintiff filed a response on February 2, 2015.  (ECF No. 47.)  On January 29, 2015, Plaintiff moved to amend the Amended Complaint and then moved for settlement on February 23, 2015, which Motions were opposed by Defendants.  (See ECF Nos. 45, 48, 53 & 54.)

### III.     LEGAL STANDARD

A.     The Magistrate Judge's Report and Recommendation

The Magistrate Judge makes only a recommendation to this court.  The recommendation has no presumptive weight.  The responsibility to make a final determination remains with this court.  See Mathews v. Weber, 423 U.S. 261, 270–71 (1976).  The court reviews de novo only those portions of a Magistrate Judge's recommendation to which specific objections are filed, and reviews those portions which are not objected to – including those portions to which only "general and conclusory" objections have been made – for clear error.  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983); Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).  The court may accept, reject, or

---

[1] The court notes that the Amended Complaint (ECF No. 8-1) is verbatim the Complaint (ECF No. 1-1).

modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions.  See 28 U.S.C. § 636(b)(1).

B.     Summary Judgment Generally

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986).  A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the non-moving party. Newport News Holdings Corp. v. Virtual City Vision, 650 F.3d 423, 434 (4th Cir. 2011).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).  The non-moving party may not oppose a motion for summary judgment with mere allegations or denials of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial.  Fed. R. Civ. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991).  All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  Anderson, 477 U.S. at 249.  "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion."  Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995).

IV.     ANALYSIS

A.     The Report

The Magistrate Judge first recommended granting summary judgment to Defendants on

6

Plaintiff's claim for violation of the First Amendment. She observed that Plaintiff's First Amendment claim cannot survive summary judgment because he can neither "identify any speech, other activities, or intimate relationships that would be afforded protection under the First Amendment's right to association pursuant to federal law" nor "refute . . . [D]efendants' assertion that he was informed of the options necessary to comply with the terms of his lease agreement and that . . . [Plaintiff] failed to do so." (ECF No. 63 at 6.) The Magistrate Judge further observed that Plaintiff is unable to refute either "[D]efendants' assertion of anonymous complaints about, and video footage of, Davis entering and exiting [Plaintiff] Hampton's apartment on multiple occasions at various hours" or "[D]efendants' contention that his car was not properly licensed in violation of Housing Authority policy." (Id. at 6–7.)

The Magistrate Judge next recommended granting summary judgment on Plaintiff's First Amendment retaliation claim on the basis that he "cannot show that 'but for' his testimony during the informal hearing process or his filing of a complaint against . . . Defendants, the lease would not have been terminated." (Id. at 8.) Moreover, she suggested that summary judgment was appropriate on Plaintiff's claim for First Amendment civil conspiracy because his conclusory allegations did not establish that "[D]efendants came to a mutual understanding, or acted 'jointly in concert' to deprive [Plaintiff] Hampton of any constitutional right." (Id. at 11.)

As to Plaintiff's claims for violation of his rights under the Fourteenth Amendment, the Magistrate Judge observed that Plaintiff was unable to either "refute . . . [D]efendants' contention that he was provided an opportunity to testify and challenge evidence during the hearing process" or their "assertion that Hampton's vehicle lacked a license plate and violated Housing Authority policy." (Id. at 9–10.) In this regard, the Magistrate Judge concluded that Plaintiff's equal protection claim fails because the evidence did not support either (1) an inference of "intentional discrimination by . . . [D]efendants" or (2) the conclusion that

7

"[D]efendants treated [Plaintiff] Hampton differently from other similarly situated tenants whose vehicles lacked license plates and valid registration . . . ." (Id. at 10.) The Magistrate Judge further concluded that there could not be a finding of the denial of due process by Defendants since Plaintiff "was accorded both an informal and formal hearing during which he had the opportunity to testify and challenge evidence . . . ." (Id.)

In her review of Plaintiff's state law claims, the Magistrate Judge concluded that Defendants were entitled to summary judgment on Plaintiff's negligence and intentional infliction of emotional distress causes of action because a reasonable jury could not find from the evidence that "[D]efendants acted negligently in the termination of . . . [Plaintiff's] lease" or that the "termination of the lease caused [Plaintiff] Hampton severe distress, and . . . [D]efendants 'intentionally or recklessly inflicted severe emotional distress,' or engaged in the type of 'extreme and outrageous' conduct necessary to state a plausible claim for intentional infliction of emotional distress." (Id. at 12–13 (citations omitted).)

In light of the foregoing, the Magistrate Judge recommended that the court should grant Defendants' Rule 56 Motions (ECF Nos. 30 & 42), deny Plaintiff's Rule 56 Motions (ECF Nos. 9 & 15), and terminate all other pending Motions (ECF Nos. 26, 45 & 53). (ECF No. 63 at 14.)

B.     Plaintiff's Objections

In his Objections to the Report, Plaintiff directs conclusory criticisms at the Magistrate Judge for (1) delaying the issuance of the Report, (2) "act[ing] outside the law . . . to protect h[er] friends and colleagues legitimate interest," and (3) "carrying such potential for bias in this case as to require disqualification." (ECF No. 65 at 2 & 10.) As to his more substantive complaints, Plaintiff asserts that the Magistrate Judge erroneously denied Plaintiff's Rule 56 Motion on his freedom of association First Amendment claim because the evidence clearly showed that his girlfriend, Jessica Davis, did not reside with him. (Id. at 5.) As to his claim of

8

retaliation for engaging in conduct protected by the First Amendment, Plaintiff asserts that the Report voids the "orderly and due administration of justice" since "Defendants retaliated against . . . Plaintiff because he engage[d] in certain forms of speech for which in effect to penalize him for such speech and its deterrent effect is the same as if the state or defendants were to fine him for this speech." (Id. at 8 (citing Sherbert v. Verner, 374 U.S. 398 (1963)).) Plaintiff argues that summary judgment as to his civil conspiracy claim should be denied because he has demonstrated the joining of 2 or more Defendants to injure him because of the "freedom of association" that resulted in the special damage of making him homeless. (Id. at 9.) Finally, Plaintiff contends that the evidence he submitted regarding the medication he is taking for "depression and other mental/mood disorders" should have been enough to submit his emotional distress claim to a jury. (Id. at 12.)

In addition to his Objections, Plaintiff filed a document titled Plaintiff's Affirmative Defense Motion to the Objection Motion and Answer to Defendants Response Motion (ECF No. 69). In this document construed as a reply (the "Reply") to Defendants' Response to Plaintiff's Objections to the Magistrate's Report and Recommendation (ECF No. 66), Plaintiff continues to argue that his constitutional rights were violated because he possessed the freedom to associate with Davis, who did not reside in the Apartment. (ECF No. 69 at 2–3.) Plaintiff also reiterates the factual support for his claim that Defendants retaliated against Plaintiff in response to his decision to engage in protected First Amendment free speech. (Id. at 4–7.) Finally, Plaintiff reaffirms his position that the grievance hearings conducted by Edgerton and Schenck violated the Goldberg[2] test and were "motivated with bias, retaliation, and a violation of the Plaintiff's due process under Housing Authority Administration Procedures and Regulation." (Id. at 11.)

---

[2] In Goldberg v. Kelly, 397 U.S. 254 (1970), the United States Supreme Court evaluated the failures of federal and state agencies to give pretermination hearings under several federally assisted programs. The court held that "due process requires an adequate hearing before

Based on the foregoing, Plaintiff contends that "the Magistrate Judge['s] Report and Recommendation should be reversed and Defendants['] Motion should be denied." (Id. at 11.)

C.     The Court's Review

   1. *Defendants' Motion for Summary Judgment*

In their Rule 56 Motions, Defendants assert that they did not retaliate or conspire against Plaintiff, deprive him of the right to free association, due process, or equal protection under the law; breach a duty to Plaintiff; or inflict emotional distress upon him.[3]  Upon review, the court agrees with the Magistrate Judge that each of Plaintiff's causes of action possesses a fatal defect.

   **a.   Count 1: Interference with the First Amendment Rights**

The First Amendment of the United States Constitution protects not only freedom of speech[4], but also the "right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends."[5]  Roberts v. U.S. Jaycees, 468 U.S.

---

termination of welfare benefits" because the benefits under these particular federal and state assistance programs were essential for the survival of the recipients.  Id. at 261.  Plaintiff contends that Goldberg required the HAF, before terminating the Lease, to employ the following process: "1) timely notice from the Housing Authority stating the basis for the proposed termination; 2) an opportunity by the tenant to confront and cross examine each witness relied on by the Housing Authority; 3) the right of the tenant to be represented by counsel; 4) a decision, based solely on evidence adduced at the hearing, in which the reasons for the decision are set forth, and 5) an impartial decision maker."  (ECF No. 69 at 10 (citing Goldberg, 397 U.S. at 266–71).)

[3] Defendants also assert that Coleman and Edgerton are entitled to judicial immunity.  (ECF No. 42-1 at 4–5.)  Although a judicial officer in the performance of his or her duties has absolute immunity from suit, see Mireles v. Waco, 502 U.S. 9, 12 (1991), the court is not persuaded that judicial immunity applies to property managers and hearing officers of the HAF.

[4] Freedom of speech under the First Amendment can encompass "spoken or written word" and communicative conduct.  See Texas v. Johnson, 491 U.S. 397, 404 (1989) (quoting Spence v. Washington, 418 U.S. 405, 409 (1974) ("[C]onduct may be 'sufficiently imbued with elements of communication to fall within the scope of the First . . . Amendment.'").

[5] A right of free association is implicit in the First Amendment.  Roberts, 468 U.S. at 622.  There are two types of protected association-association involving "intimate human relationships" and association to engage "in those activities protected by the First Amendment."  Id. at 617–18. Intimate association concerns those relationships inherent to a family structure.  See McCabe v. Sharrett, 12 F.3d 1558, 1563 (11th Cir. 1994) (stating that "[a]t a minimum, the right of intimate association encompasses the personal relationships that attend the creation and sustenance of a

609, 622 (1984); U.S. Const. amend. I.  In his First Amendment claim, Plaintiff asserts that Defendants terminated Plaintiff's Lease, allegedly in violation of the First Amendment's protection of the freedom of assembly (often called the freedom of association), because his relationship with Davis violated HAF's public housing policies and procedures.  (ECF No. 1-1 at 6–7.)  After reviewing the content of Plaintiff's filings, the court agrees with the Magistrate Judge that Plaintiff's allegations fail to establish that either the termination of the Lease was caused by words that he uttered or that his activities constituted a form of protected speech, expressive conduct or otherwise.  (ECF No. 63 at 6 ("Hampton has failed to identify any speech, other activities, or intimate relationships that would be afforded protection under the First Amendment's right to association pursuant to federal law.") (citation omitted).)  The court further agrees with the Magistrate Judge that "no reasonable jury could find that . . . [D]efendants violated [Plaintiff] Hampton's right to free association under the First Amendment."  (Id. at 7.)

"To determine whether a governmental rule unconstitutionally infringes on an associational freedom, courts balance the strength of the associational interest in resisting governmental interference with the state's justification for the interference."  Chi Iota Colony of Alpha Epsilon Pi Fraternity v. City Univ. of N.Y., 502 F.3d 136, 143 (2d Cir. 2007).  "When a statutory classification significantly interferes with the exercise of a fundamental right, it cannot be upheld unless it is supported by sufficiently important state interests and is closely tailored to effectuate only those interests."  Zablocki v. Redhail, 434 U.S. 374, 388 (1978) (citations omitted).

Plaintiff's asserted associational right is his dating relationship with Davis.  Because a

---

family," including marriage).  Expressive association, on the other hand, relates to protected rights such as "speech, assembly, petition for redress of grievances, and the exercise of religion." Id.

dating relationship between adults does not fall under one of the bright-line categories established by the Supreme Court as "most intimate," strict scrutiny is not an appropriate measure of review. See Roberts, 468 U.S. at 619 ("The personal affiliations that exemplify these considerations, and that therefore suggest some relevant limitations on the relationships that might be entitled to this sort of constitutional protection, are those that attend the creation and sustenance of a family—marriage, . . . ; childbirth, . . . ; the raising and education of children, . . . ; and cohabitation with one's relatives, . . . .") (internal citations omitted). If Plaintiff's associational right to date Davis is given substantial weight, the standard of review would be one of intermediate scrutiny.[6]

The HAF's mission is to provide "quality, affordable housing in healthy neighborhoods through partnerships with . . . residents and other groups, fostering neighborhood redevelopment and opportunities for those we serve to achieve self-sufficiency." The Housing Authority of Florence, http://www.hafsc.org (last visited Sept. 9, 2015). Therefore, the HAF has a legitimate interest in providing housing to low to moderate income families and individuals in furtherance of the general, community welfare. To protect these legitimate interests, the HAF has established policies and procedures to facilitate its management of public housing. Because the HAF's interest in the general public welfare is substantial, and there is a reasonable fit between the HAF's interest and its policies and procedures against allowing unidentified, undocumented individuals from occupying one of its dwelling units, the court finds that the policies and procedures used to terminate the Lease survive intermediate scrutiny.

As a result of the foregoing, the court finds that Defendants are entitled to summary judgment on Plaintiff's First Amendment claim.

---

[6] "Under . . . [the intermediate scrutiny] level of deference, a content-neutral regulation is valid if it 'furthers a substantial government interest, is narrowly tailored to further that interest, and leaves open ample alternative channels of communication.'" Cent. Radio Co. Inc. v. City of Norfolk, Va., 776 F.3d 229, 237 (4th Cir. 2015) (citation omitted).

### b. Count 2: Discrimination

Plaintiff alleges he suffered discrimination in violation of the Fourteenth Amendment because "he exercise[d] his right to park his vehicle . . . [like] other tenants of Creekside Village." (ECF No. 1-1 at 7.) In the Report, the Magistrate Judge observed that Plaintiff's evidence fails to create a situation where "a reasonable factfinder could infer intentional discrimination by . . . [D]efendants, or that . . . [D]efendants treated [Plaintiff] Hampton differently from other similarly situated tenants whose vehicles lacked license plates and valid registration, . . . ." (ECF No. 63 at 10 (citation omitted).) Upon review, the court finds that there is insufficient evidence to establish that the discrimination alleged by Plaintiff had occurred. Accordingly, Defendants are entitled to summary judgment on this claim.

### c. Count 3: Civil Conspiracy

Plaintiff's First Amendment civil conspiracy[7] claim is unsustainable because he has not demonstrated a violation of any rights protected by the United States Constitution. See Glassman v. Arlington Cnty., Va., 628 F.3d 140, 150 (4th Cir. 2010) ("Because we hold that the defendants' actions in this case did not result in the 'deprivation of a constitutional right,' we conclude that Glassman's civil conspiracy claim was properly dismissed."). Moreover, there is not any evidence in the record of an agreement or mutual understanding by Defendants to deprive Plaintiff of a constitutional right. Accordingly, the court agrees with the Magistrate Judge that Defendants should be granted summary judgment on Plaintiff's cause of action for civil conspiracy.

---

[7] "[T]o establish a civil conspiracy under § 1983, a Plaintiff must present evidence that the Defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy, which resulted in the deprivation of a constitutional right." Glassman, 628 F.3d at 150 (4th Cir. 2010) (citing Hinkle v. City of Clarksburg, W. Va., 81 F.3d 416, 421 (4th Cir. 1996)).

### d. Count 4: Equal Protection Deprivation

Upon review, the court cannot find merit in Plaintiff's claim that the termination of his Lease violates the Equal Protection Clause.[8] Specifically, the court finds that Plaintiff has not demonstrated that he has been "treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." See Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 264–65 (1977) (requiring proof of racially discriminatory intent or purpose to show an equal protection violation). Therefore, the court grants summary judgment to Defendants on Plaintiff's equal protection claim.

### e. Count 5: Negligence

The court observes that Plaintiff's submissions/evidence do not convey the standard of conduct he is alleging Defendants violated.[9] Moreover, the court cannot discern a specific objection by Plaintiff to the Magistrate Judge's recommendation that Defendants' Rule 56 Motions should be granted as to the negligence claim. Because it does not perceive clear error in the Report, the court accepts the Magistrate Judge's recommendation. See Diamond, 416 F.3d at 315 ("[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'") (citation omitted). Therefore, Defendants are entitled to summary judgment on the cause of action for negligence.

---

[8] The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause affords that "all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).

[9] To assert direct liability based on a negligence claim in South Carolina, "a plaintiff must show that the (1) defendant owed a duty of care to the plaintiff; (2) defendant breached the duty by a negligent act or omission; (3) defendant's breach was the actual and proximate cause of the plaintiff's injuries; and (4) plaintiff suffered an injury or damages." Dorrell v. S.C. Dep't of Transp., 605 S.E.2d 12, 15 (S.C. 2004) (citation omitted). "Whether the law recognizes a particular duty is an issue of law to be determined by the court." Jackson v. Swordfish Inv., L.L.C., 620 S.E.2d 54, 56 (S.C. 2005) (citation omitted).

### f. Count 6: Failure to Provide Exculpatory Evidence

In asserting that Davis did not live in the Apartment and this actuality was exculpatory information that was withheld from Coleman at the final lease termination hearing (see, e.g., ECF No. 1-1 at 11–12), Plaintiff makes a claim that is similar to the type of due process[10] violations alleged pursuant to Brady v. Maryland, 373 U.S. 83 (1963).[11] In this case, Plaintiff's claim cannot survive summary judgment because there is no question that he also possessed the information that he claims was withheld from Coleman. Moreover, the court agrees with the Magistrate Judge that Plaintiff has failed to demonstrate that "he was [not] provided an opportunity to testify and challenge evidence during the hearing process." (ECF No. 63 at 9.) Therefore, because the uncontroverted evidence establishes that Plaintiff had the opportunity to convey the information regarding Davis to Coleman, the court finds that Defendants are entitled to summary judgment on the claim that they withheld exculpatory evidence.

### g. Count 7: Retaliation

Plaintiff is resolute in his insistence that his eviction from the Apartment was in retaliation for having engaged in protected First Amendment speech when he filed complaints in Magistrate's Court on October 31, 2014, and the Florence County Court of Common Pleas on December 3, 2014. (ECF No. 47 at 13–15 (referencing ECF Nos. 47-7 & 47-8).) Nevertheless,

---

[10] The Due Process Clause of the Fourteenth Amendment states that "No state shall . . . deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. Due process includes both procedural and substantive components.

[11] In Brady, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. A Brady due process violation occurs where the government fails to provide a defendant with material exculpatory evidence. United States v. Stokes, 261 F.3d 496, 502 (4th Cir. 2001) (To establish a Brady violation, the undisclosed evidence must be shown to have been "(1) favorable . . . ; (2) material; and (3) that the prosecution had the materials and failed to disclose them.") (citations omitted). Generally, the prosecution's failure to disclose exculpatory evidence gives rise to a due process violation where "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Kyles v. Whitley, 514 U.S. 419, 435 (1995).

the court agrees with the Magistrate Judge's determination that Plaintiff's retaliation[12] claim fails as a matter of law. The court finds that Plaintiff's evidence does not demonstrate that his alleged exercise of a right protected by the First Amendment was a substantial factor motivating Defendants' alleged retaliatory actions. Specifically, the evidence establishes that Edgerton communicated the decision to terminate the Lease to Plaintiff on October 15, 2014, several weeks before Plaintiff's allegedly protected conduct. As a result, Defendants are entitled to summary judgment on Plaintiff's claim for retaliation.

### h.  Count 8: Intentional Infliction of Emotional Distress

The court agrees with the Magistrate Judge that Plaintiff's evidence does not support a finding of the type of "outrageous" conduct necessary to ground a claim for intentional infliction of emotional distress.[13] In this regard, the only evidence provided by Plaintiff shows that he has a prescription for Celexa, which is an "[a]ntidepressant medication[] . . . used to treat a variety of conditions, including depression and other mental/mood disorders." (ECF No. 47-9 at 1–2.) This evidence, alone, is not enough for Plaintiff to make the requisite showing that his alleged emotional distress resulted from Defendants' conduct. Accordingly, Defendants are entitled to summary judgment on Plaintiff's claim for intentional infliction of emotional distress.

### 2.  *Plaintiff's Motion for Summary Judgment*

Because the court agrees with the Magistrate Judge that Defendants' Rule 56 Motions

---

[12] To state a claim of retaliation under § 1983, a plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994).

[13] "To establish the tort of intentional infliction of emotional distress, or outrage, the plaintiff must establish the following: (1) the defendant intentionally or recklessly inflicted severe emotional distress, or knew that distress would probably result from his conduct; (2) the defendant's conduct was so extreme and outrageous that it exceeded all possible bounds of decency and was furthermore atrocious, and utterly intolerable in a civilized community; (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it." Gattison v. S.C. State Coll., 456 S.E.2d 414, 416 (S.C. Ct. App. 1995).

should be granted, Plaintiff's Rule 56 Motions must be denied.

> 3. *Plaintiff's Motion for Preliminary Injunction, Motion to Amend the Amended Complaint, and Motion for Settlement*

In his Objections, Plaintiff did not specifically address the Magistrate Judge's recommendation to the court that it should terminate Plaintiff's pending Motion for Preliminary Injunction[14] (ECF No. 26), Motion to Amend the Amended Complaint[15] (ECF No. 45), and Motion for Settlement[16] (ECF No. 53). In the absence of objections to the Magistrate Judge's Report, this court is not required to provide an explanation for adopting the recommendation. See Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983). Rather, "in the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond, 416 F.3d at 315. Upon review, the court does not find clear error in the Report and agrees with the Magistrate Judge that Plaintiff's Motion for Preliminary Injunction, Motion to Amend the Amended Complaint, and Motion for Settlement should be terminated and/or denied.

## V.  CONCLUSION

For the foregoing reasons, the court **GRANTS** the Motions for Summary Judgment of Defendants Paula Edgerton; Robina Schenck; Cynthia Williams; and Willie Coleman, in their official capacities with the Housing Authority of Florence. (ECF Nos. 30 & 42.) The court

---

[14] In his Motion for Preliminary Injunction, Plaintiff attempted to enjoin his eviction from the Apartment. (ECF No. 26.) The Magistrate Judge observed that the Motion was moot because Plaintiff had "advised the court that he no longer live[d] at [the] Creekside Village [Apartment Building]." (ECF No. 63 at 2 n.2 (referencing ECF No. 60).)

[15] In his Motion to Amend the Amended Complaint, Plaintiff reasserts his allegations that he was retaliated against "because he engaged in protected First Amendment free speech . . . ." (ECF No. 45 at 2.) The Magistrate Judge observed that "further amendment of the Amended Complaint to re-assert such a claim would be futile" and recommended denying the Motion to Amend. (ECF No. 63 at 7 n.3.)

[16] In his Motion and Motion for Willful Settlement for Claims of Violation for Freedom of Association, Due Process Violation, Retaliation, Conspiracy and Emotional Distress Claims, Plaintiff asserted that he would accept $1,200,000.00 to settle all of his claims to avoid their submission to a jury. (ECF No. 53 at 2.)

further **DENIES** the Motions for Summary Judgment of Plaintiff Nathaniel Hampton. (ECF Nos. 9 & 15.) The court **DENIES** Plaintiff's Motion for Preliminary Injunction (ECF No. 26), Motion to Amend the Amended Complaint (ECF No. 45), and Motion for Settlement (ECF No. 53). The court **ACCEPTS** the Magistrate Judge's Report and Recommendation (ECF No. 63) and incorporates it herein by reference.

    **IT IS SO ORDERED.**

*/s/ J. Michelle Childs*

United States District Judge

September 9, 2015
Columbia, South Carolina